UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PETER BRENNAN, JANEE EVANS,
COREY MORIYAMA, STEPHANIE
SCHAEFER, and PAM WARREN,
Individually and on Behalf of All Others
Similarly Situated, on Behalf of the
PROVIDENCE HEALTH 401(K)
SAVINGS PLAN and the ST. JOSEPH
AND COVENANT HEALTH SYSTEMS
401(K) PLAN

Plaintiffs,

v.

PROVIDENCE HEALTH & SERVICES; ST.
JOSEPH HEALTH SYSTEM; BOARD OF
DIRECTORS OF PROVIDENCE ST. JOSEPH
HEALTH, and its members; PROVIDENCE
HEALTH & SERVICES TOTAL REWARDS
MANAGEMENT COMMITTEE, and its
members; INVESTMENT REVIEW
COMMITTEE OF PROVIDENCE ST.
JOSEPH HEALTH, and its members

Defendants.

Case No.

**CLASS ACTION COMPLAINT**

CLASS ACTION COMPLAINT - 1

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

**INTRODUCTION**

Plaintiffs, Peter Brennan, Janee Evans, Corey Moriyama, Stephanie Schaefer, and Pam Warren ("Plaintiffs"), individually, on behalf of the Providence Health 401(k) Savings Plan (the "Savings Plan") and the St. Joseph and Covenant Health Systems 401(k) Plan (the "St. Joseph Plan," and together with the Savings Plan, the "Plans"), and as representatives of a class of participants and beneficiaries of the Plans, by and through their counsel, bring this Complaint for breach of fiduciary duties and other violations of the Employee Retirement Income Security Act of 1974 ("ERISA") against defendants Providence Health & Services and St. Joseph Health System (collectively, "Providence"), the Board of Directors of Providence St. Joseph Health, and its members (the "Board"), the Providence Health & Services Total Rewards Management Committee and its members (the "Management Committee"), and the Investment Review Committee of Providence St. Joseph Health and its members (the "Investment Committee") (collectively, the "Defendants").

**NATURE AND SUMMARY OF THE ACTION**

1.     This is a class action on behalf of the Plans, and a class of participants and beneficiaries of the Plans, against fiduciaries of the Plans arising from their breaches of fiduciary duties under ERISA.

2.     ERISA requires fiduciaries of retirement plans to closely monitor investments, remove imprudent investments and make investment decisions based solely in the interests of participants in retirement plans.  *See* 29 U.S.C §§ 1104(a)(1). ERISA fiduciary duties are "the highest known to the law." *Johnson v. Couturier,* 572 F.3d 1067, 1077 (9th Cir. 2009).

3.     Here, Plaintiffs bring this action under 29 U.S.C. § 1132(a)(2) and 1132(a)(3), alleging that Defendants—the Plans' fiduciaries—breached their duties by: (1) retaining an underperforming investment option—the Invesco Diversified Dividend Fund R5 (the "Invesco Fund")—for the Plans between 2020 and 2025, despite more suitable large value/dividend strategy funds having been readily available; and (2) failing to monitor the fiduciaries responsible for

CLASS ACTION COMPLAINT - 2

administration and management of the Plans' actions in retaining the imprudent Invesco Fund for the Plans.

4.  Defendants' breaches and imprudent investment decisions have resulted in the loss of nearly $70 million of assets for the Plans and their participants.

5.  The Plans are defined contribution retirement plans under 29 U.S.C. § 1002(34) and are sponsored and administered by Providence. As evidenced by their tax-deferred qualities, the primary purpose of the Plans is to allow participants to save for retirement.

6.  Providence is the "sponsor" of the Plans within the meaning of 29 U.S.C. § 1002(16)(B). Providence acts through a Board of Directors.

7.  The Management Committee is the entity designated by Providence and the Board to serve as the "plan administrator" for general oversight of the Plans and is a "named fiduciary" within the meaning of 29 U.S.C. § 1002(16)(A) and 29 U.S.C. § 1102(a).

8.  The Investment Committee is the "named fiduciary" within the meaning of 29 U.S.C. § 1102(a) for purposes of selecting and monitoring of investment options available under the Plans. The Investment Committee is also responsible for the appointment, retention, and removal of the Plans' trustees and investment managers who hold the assets or manage the investment of the funds in the Plans.

9.  When designating the different investment options for inclusion in the Plans, Defendants were required to independently investigate and regularly monitor each of the Plans' investment options with the care and skill of a prudent investor.  29 U.S.C. § 1104(a)(1)(B).

10.  Rather than acting diligently and prudently, Defendants breached their fiduciary duties by selecting and retaining the Invesco Fund as an investment option for the Plans during the entirety of the "Class Period" (April 17, 2020 to the date of judgment) despite the Invesco Fund having underperformed its peer benchmarks on a trailing three-year basis for nine consecutive years (2017-2025), a trailing five-year basis for eight consecutive years (2018-2025), a trailing ten-year basis for three consecutive years (2023-2025), and on a cumulative compounded basis.  The Invesco

CLASS ACTION COMPLAINT - 3

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

Fund suffered from ongoing quantitative deficiencies resulting in massive underperformance relative to that of well-established, prudently managed, comparable funds that Defendants could have selected for the Plans.

11.     Based on Defendants' conduct, Plaintiffs bring this action on behalf of the Plans, and as representatives of a class of participants and beneficiaries of the Plans, asserting claims for a breach of the fiduciary duty of prudence (Count One), and for failure to monitor fiduciaries (Count Two).  In connection with these claims, Plaintiffs seek to recover all losses to the Plans resulting from Defendants' fiduciary breaches, and other appropriate relief.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e)(1) because this action arises under 29 U.S.C. § 1132(a).

13.     This district is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because it is the district where the Plans are administered, at least one of the alleged breaches took place, and where Defendant Providence is headquartered.

## THE PARTIES

I.     **Plaintiffs**

14.     Plaintiffs bring this suit individually, on behalf of the Plans, and on behalf of a class of participants and beneficiaries of the Plans affected by the challenged conduct of Defendants.

15.     Plaintiff Peter Brennan was employed as Chief Philanthropy Officer with Providence from 2013 through 2025. Brennan was a participant in the Savings Plan, as defined in 29 U.S.C. § 1002(7), during the Class Period.  Brennan suffered individual injury by investing in the Plan's poorly performing Invesco Fund.

16.     Plaintiff Janee Evans was employed as a hospital billing senior analyst with Providence from 2005 through 2020.  Evans was a participant in the Savings Plan, as defined in 29 U.S.C. § 1002(7), during the Class Period.  Evans suffered individual injury by investing in the Plan's poorly performing Invesco Fund.

CLASS ACTION COMPLAINT - 4

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

17.     Plaintiff Corey Moriyama was employed as an Employee Labor Relations Consultant with Providence from 2018 through 2022.  Moriyama was a participant in the Savings Plan, as defined in 29 U.S.C. § 1002(7), during the Class Period.  Moriyama suffered individual injury by investing in the Plan's poorly performing Invesco Fund.

18.     Plaintiff Stephanie Schaefer was employed as a psychologist, and Program Manager of Caregiver Wellness with Providence from January 2022 through December 2022.  Schaefer was a participant in the Savings Plan, as defined in 29 U.S.C. § 1002(7), during the Class Period.  Schaefer suffered individual injury by investing in the Plan's poorly performing Invesco Fund.

19.     Plaintiff Pam Warren was employed as a Senior Clinical Manager with Providence from 2007 through 2023.  Warren was a participant in the Savings Plan, as defined in 29 U.S.C. § 1002(7), during the Class Period.  Warren suffered individual injury by investing in the Plan's poorly performing Invesco Fund.

20.     As detailed *infra*, the Plans have suffered nearly $70 million in losses resulting from the fiduciary breaches at issue and remain vulnerable to continuing harm.  As participants in the Plans, Plaintiffs have standing to bring claims in a representative capacity on behalf of the Plans pursuant to 29 U.S.C. § 1132(a)(2), and on behalf of all holders of the Invesco Fund because they suffered actual injuries to their accounts in which they held the Invesco Fund during the Class Period, and the alleged harms to holders of the Invesco Fund can be traced to the same challenged conduct: the participants in the Plans suffered financial harm as a result of the Plans' imprudent investment options and the process Defendants used to monitor and retain the Invesco Fund. This singular conduct with respect to the Plans harmed each of the holders of the Invesco Fund at issue in this action.

## II.     Defendants

21.     Providence Health & Services, a Washington nonprofit corporation headquartered in Renton, Washington, is a Catholic healthcare system operating across the western United States.

CLASS ACTION COMPLAINT - 5

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

22.    St. Joseph Health System, a California nonprofit corporation headquartered in Renton, Washington, is also a Catholic healthcare corporation. In 2016, Providence Health & Services merged with St. Joseph Health System, forming what is now known as Providence St. Joseph Health, a Washington nonprofit corporation headquartered in Renton, Washington. Providence Health & Services and St. Joseph Health are collectively referred to herein as "Providence." Providence comprises 51 hospitals, over 1,100 clinics, long-term care and support facilities, and a health plan covering about 375,000 members. Providence is the third-largest nonprofit healthcare organization in the United States and generated over $30 billion in operating revenue in its 2024 fiscal year. Providence acts through a Board of Directors.

23.    Providence is the "sponsor" of the Plans[1] within the meaning of 29 U.S.C. § 1002(16)(B) and is therefore a fiduciary responsible for ensuring the Plans are operated in compliance with ERISA. Additionally, as the entity responsible for appointing and removing members of the Management Committee and the Investment Committee, Providence had knowledge of the fiduciary breaches committed by the other Defendants, and did not make reasonable efforts under the circumstances to remedy those breaches.

24.    Providence Health & Services Total Rewards Management Committee (the "Management Committee") is the "plan administrator," with general oversight responsibilities for the Plans, and a "named fiduciary" within the meaning of 29 U.S.C. § 1102(a).

25.    The Investment Review Committee of Providence St. Joseph Health (the "Investment Committee") is a "named fiduciary" within the meaning of 29 U.S.C. § 1102(a) for selection and monitoring of investment funds available under the Plans. The Investment Committee is the fiduciary responsible for overseeing investments under the Plans but has delegated the daily administrative responsibility for implementing participant investment instructions to the trustee and an administrative services provider appointed by Providence.    Additionally, the Investment

---

[1]    Specifically, Providence Health & Services is the sponsor of the Savings Plan, and St. Joseph Health System is the sponsor of the St. Joseph Plan.

CLASS ACTION COMPLAINT - 6

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

Committee, in its discretion, directs the trustee to establish, modify, and/or terminate investment funds as it deems appropriate and in the best interest of the Plans' participants.

26.     Defendant the Board of Directors of Providence St. Joseph Health ("Board") is a fiduciary of the Plans responsible for appointing and monitoring the Plans' fiduciaries, including the Management Committee and the Investment Committee.

## SUBSTANTIVE ALLEGATIONS

### I.     The Plans

27.     The Plans are defined contribution plans subject to the provisions of ERISA.

28.     A "defined contribution" plan is a retirement plan in which an individual account is set up for each participant with benefits based upon the amount contributed to the participant's account (through employee contributions and, if applicable, employer contributions), and "any income, expenses, gains and losses." 29 U.S.C. § 1002(34).

29.     The Plans are established and maintained under written documents as required by 29 U.S.C. § 1102(a).

30.     The Plans pay expenses from the Plans' assets, and administrative expenses are paid by participants as a reduction of investment income.

31.     Defendants—through the Investment Committee—determined the appropriateness of the Plans' investment offerings and monitored investment performance.

32.     Under the Plans, newly hired employees are "automatically enrolled" as participants in the Plan approximately 45 days after beginning employment. The Plans are participant-directed defined contribution plans, meaning participants may direct the investment of their contributions into various investment options offered by the Plans.

33.     The Plans provide for retirement income for approximately 150,000 participants, comprised of Providence employees, former employees, and their beneficiaries.

34.     At the choice and discretion of Defendants, various investment options were made available to the Plans' participants.

CLASS ACTION COMPLAINT - 7

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

35.    Poor investment performance can significantly impair the value of a participant's account. Fiduciary decisions have the potential to dramatically affect the amount of money participants can save for retirement.

36.    In 2024, the Plans had approximately 146,825 participants and thus, had more participants than 99.8% of the defined contribution plans that filed Form 5500s for the 2024 year.

37.    In 2024, the Plans had approximately $14 billion in assets entrusted to the care of the Plans' fiduciaries. The Plans had more assets than 99.625% of the defined contribution plans that filed Form 5500s for the 2024 year.

38.    As of December 31, 2024, approximately $584 million, or approximately 4% of the Plans' total assets, was invested in the Invesco Fund.

**II.    The Invesco Fund**

39.    The Invesco Fund has been part of the Plans since at least 2014.

40.    The Invesco Fund's investment objective is "long-term growth of capital and, secondarily, current income."[2] Moreover, the Invesco Fund "seeks to serve as a cornerstone of investors' equity portfolios by implementing a total return approach that emphasizes price appreciation, income from dividends, and preservation over a full market cycle. This focus on high-quality, dividend-paying stocks is designed to help buffer market volatility."[3]

41.    An investment fund can be either passively or actively managed. Passive funds, such as "index funds," are meant to mirror the performance of an index. For example, a passive index fund pegged to the S&P 500 would hold securities of the same or similar type matching the composition of the S&P 500 index. In contrast, actively managed funds are meant to beat the market through superior investment selection and are comprised of individual stocks, bonds, and/or assets selected by a manager or investment advisor.

42.    An investment manager of a plan may choose to include actively managed funds and/or passive funds within a plan. The Invesco Fund is actively managed and, according to the

---

[2]    Invesco Fund Summary Prospectus dated February 28, 2025.
[3]    Invesco Fund Fact Sheet, dated December 31, 2025.

CLASS ACTION COMPLAINT - 8

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

prospectus, "depends heavily on the Adviser's judgment about markets, interest rates or the attractiveness, relative values, liquidity, or potential appreciation of particular investments made for the [Invesco] Fund's portfolio."

43.     According to the prospectus,[4] the Invesco Fund's principal investment strategy is to:

> invest, under normal circumstances, at least 80% of its net assets (plus any borrowings for investment purposes) in common stocks of companies which pay dividends, and in other instruments that have economic characteristics similar to such securities. The principal type of equity security in which the Fund invests is common stock.
>
> The Fund invests in securities that the portfolio managers believe are undervalued based on various valuation measures.
>
> The Fund may invest up to 25% of its net assets in securities of foreign issuers.
>
> In selecting investments, the portfolio managers seek to identify dividend-paying issuers with strong profitability, solid balance sheets and capital allocation policies that support sustained or increasing dividends and share repurchases. Through fundamental research, financial statement analysis and the use of several valuation techniques, the management team estimates a target price for each security over a 2-3 year investment horizon. The portfolio managers seek to manage risk by utilizing a valuation framework, careful stock selection and a rigorous buy- and-sell discipline and incorporate an assessment of the potential reward relative to the downside risk to determine a fair valuation over the investment horizon. When evaluating cyclical businesses, the management team seeks companies that have normalized earnings power greater than that implied by their current market valuation and that return capital to shareholders via dividends and share repurchases. The portfolio managers then construct a portfolio they believe provides the best total return profile, which is created by seeking a combination of price appreciation potential, dividend income and capital preservation. As reflected in the Fund's name, the portfolio managers seek to diversify the Fund's dividend-paying holdings across a wide range of market sectors.

---

[4]     Invesco Fund Summary Prospectus.

CLASS ACTION COMPLAINT - 9

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

44.     Importantly, the Invesco Fund is the only U.S.-based large value/dividend-paying fund available in the Plans.  Participants who want to pursue a large value/dividend-paying investment strategy have no other choice other than to invest in the Invesco Fund.

45.     The Invesco Fund is in the "Large Value" Morningstar category,[5] and according to the prospectus, its two benchmarks are the Russell 1000 Value Index ("Russell 1000") and the S&P 500 Index ("S&P500").

### III.    Defendants Breached Their Fiduciary Duties Under ERISA

### A.  Fiduciary Duties Under ERISA
#### i.   Fiduciary Duties of Prudence and Loyalty

46.     Under ERISA, in addition to named fiduciaries, any other persons who perform fiduciary functions are treated as fiduciaries.  *See* 29 U.S.C. § 1002(21)(A); 29 U.S.C. § 1102(a)(1).

47.     ERISA imposes strict fiduciary duties of prudence and loyalty upon retirement plan fiduciaries.  29 U.S.C. § 1104(a).  These duties apply to all fiduciary acts, including the Defendants' retention of investment options for the Plan.  ERISA's duty of prudence requires fiduciaries to discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters would use." 29 U.S.C. §1104(a)(1)(B).

48.     Importantly, the fact that participants may direct the investment of their contributions in a defined contribution plan account "does not serve to relieve a fiduciary from its duty to prudently select and monitor any . . . designated investment alternative offered under the plan."  29 C.F.R. § 2550.404c-1(d)(2)(iv).

49.     Fiduciaries have "the continuing duty to monitor [Plan] investments and remove imprudent ones" that exist "separate and apart from the [fiduciaries'] duty to exercise prudence in selecting investments." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015).  Prudence requires a review at "regular intervals." *Id.*

---

[5]     Morningstar is a leading provider of investment research and is commonly relied upon by industry professionals.  A Morningstar Category is assigned by placing funds into peer groups based on their portfolio statistics and compositions over the prior three years.

CLASS ACTION COMPLAINT - 10

50.     "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Id.* at 530.  If "fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Hughes v. Nw. Univ.*, 595 U.S. 170, 176 (2022) (citing *Tibble*, 575 U.S. at 529-30).

51.     When considering whether to retain an actively managed equity mutual fund that invests primarily in large-value, dividend-paying stocks, a prudent fiduciary would evaluate the entire universe of similar funds available based on qualitative and quantitative metrics, such as trailing 3, 5 and 10-year performance relative to peer benchmarks.

ii.   Fiduciary Liability Under ERISA

52.     Under 29 U.S.C. § 1109, fiduciaries to the Plan are personally liable to make good to the Plan any harm caused by their breaches of fiduciary duty. Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

iii.   Co-fiduciary Liability

53.     ERISA also imposes co-fiduciary liability where a plan fiduciary knowingly participates in, or knowingly fails to cure, a breach by another fiduciary. Specifically, under 29 U.S.C. § 1105(a), a fiduciary shall be liable for a breach of fiduciary duty of another fiduciary if:

1. he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

2. if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

3. if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

CLASS ACTION COMPLAINT - 11

**B. The Invesco Fund Consistently Underperformed as Compared to Meaningful Benchmarks**

54.    As detailed below, the Invesco Fund has significantly underperformed its own Prospectus Benchmarks, the Morningstar Large Value Benchmark, and four peer Comparator Funds on a trailing 3, 5, and 10-years basis and a cumulative basis.

i.    <u>Meaningful Benchmarks to Compare the Investment Performance of the Invesco Fund</u>

a.    *Prospectus Benchmarks and Morningstar Benchmark*

55.    The Invesco Fund's prospectus compares the Invesco Fund's performance to that of a style-specific benchmark (the Russell 1000) and a broad-based securities market benchmark (the S&P500, and collectively, the "Prospectus Benchmarks").

56.    Because the Invesco Fund is part of the Morningstar "Large Value" category, the Morningstar Category Large Value Index ("Morningstar LV Benchmark") is an additional comparator of performance. *See, e.g.*, *Mattson v. Milliman, Inc.,* No. C22-0037 TSZ, 2024 WL 3024875, at *9 (W.D. Wash. June 17, 2024) (accepting a Morningstar peer group as "meaningful measures of performance for the [challenged] funds").

b.    *The Comparator Funds*

57.    The Invesco Fund is a U.S.-focused large-value and dividend-oriented equity fund designed to achieve long-term total return through investment primarily in equity securities of large-capitalization companies that generate stable earnings and return capital to shareholders through dividends. The Invesco Fund is directly comparable to other actively managed, U.S.-focused large-capitalization value and dividend-oriented equity funds offered in defined contribution plans, including the following four Comparator Funds identified by Plaintiffs:

CLASS ACTION COMPLAINT - 12

| Fund | Comparator Funds[6] |
|---|---|
| **Invesco Fund** | Vanguard Windsor II Admiral Shares (VWNAX) |
| | Columbia Dividend Income Fund Institutional (GSFTX) |
| | Hamlin High Dividend Equity Fund Institutional (HHDFX) |
| | Thrivent Large Cap Value Fund Class S (TLVIX) |

58.     All four of the Comparator Funds share with the Invesco Fund similar investment styles, portfolio construction approaches, and risks.

59.     More specifically, the Invesco Fund and all four Comparator Funds are in the same Large Value Morningstar category, and they all have similar investment goals – namely, to provide long-term capital appreciation *and* income from dividends.

60.     They all maintain similar asset allocations, with each investing predominantly in U.S. large-cap equities diversified across the same core sectors, including financials, healthcare, industrials, consumer sectors, and technology. The Invesco Fund holds approximately 97.9% equities, TLVIX approximately 96.9%, the HHDFX approximately 99.7%, GSFTX approximately 98.5%, and VWNAX approximately 95.4%. This clustering in the mid-to-high 90% range demonstrates a strong alignment in overall equity exposure and strategy.

61.     Because of their similarities, the Invesco Fund and all four Comparator Funds also share the same risks, including risks associated with the manager's selection of securities, investment style risk associated with large-cap value and dividend strategies, and market risk arising from exposure to large-cap U.S. equity markets.

62.     Moreover, all four Comparator Funds share at least one prospectus benchmark with the Invesco Fund. For example, VWNAX's and GSFTX's primary prospectus benchmarks are the Russell 1000; HHDFX's primary prospectus benchmark is the S&P500; and one of TLVIX's two prospectus benchmarks is the Russell 1000.

---

[6]     The term "Comparator Funds" as used herein refers collectively to: (1) VWNAX, (2) GSFTX, (3) HHDFX, and (4) TLVIX.

CLASS ACTION COMPLAINT - 13

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

63.     The Comparator Funds are particularly appropriate comparators in the context of a defined contribution retirement plan because they occupy the same role within a plan's investment lineup—namely, actively managed large-cap value or dividend-oriented equity options intended to provide participants with exposure to established dividend-paying companies and long-term equity income strategies.

64.     Fiduciaries selecting an actively managed large-cap value and dividend strategy funds for plan participants would reasonably evaluate the performance of the selected fund against other funds pursuing similar strategies and operating within the same asset class. The Comparator Funds are all widely available institutional share-class mutual funds that pursue materially similar mandates and invest in the same segment of the U.S. equity market as the Invesco Fund. Accordingly, the Comparator Funds represent meaningful peer funds against which a prudent fiduciary would evaluate whether the Invesco Fund delivered competitive performance and value for the Plans' participants.

65.     Based on the similarities of the Comparator Funds' structures and Morningstar's inclusion of the Invesco Fund and the Comparator Funds in the same category, the Comparator Funds represent meaningful comparators to the Invesco Fund. When combined with its Prospectus Benchmarks, Plaintiffs have identified meaningful benchmarks that provide a sound basis of comparison to the Invesco Fund.

    ii. <u>The Invesco Fund Consistently Underperformed as Compared to the Meaningful Benchmarks</u>

66.     As detailed below, the Invesco Fund has significantly underperformed its own Prospectus Benchmarks, the Morningstar LV Benchmark, and its peer Comparator Funds on a trailing 3, 5, and 10-years basis and a cumulative basis.

67.     The Invesco Fund's underperformance has undermined the retirement savings of participants in the Plan since at least 2017.  <u>Table 1.a</u> below illustrates the Invesco Fund's performance as compared to the Prospectus Benchmarks (Russell 1000 and S&P500) and the Morningstar LV Comparator based on: (i) yearly returns for the years 2014-2025; (ii) trailing three-

CLASS ACTION COMPLAINT - 14

year returns for the years 2016-2025; (iii) trailing five-year returns for the years 2018-2025; and (iv) trailing ten-year returns for the years 2023-2025:

Table 1.a
Invesco Fund
Annual and 3-Year, 5-Year, and 10-Year Compounded Trailing Returns vs.
Prospectus Benchmarks & Morningstar LV Benchmark

| Fund | Annual Performance (%) | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
| **Invesco** | 12.32 | 2.09 | 14.66 | 8.53 | -7.54 | 25.46 | 0.44 | 19.29 | -1.38 | 9.07 | 13.45 | 15.8 |
| **Russell 1000** | 13.45 | -3.83 | 17.34 | 13.66 | -8.27 | 26.54 | 2.80 | 25.16 | -7.54 | 11.46 | 14.37 | 15.91 |
| *Alpha* | -1.13 | 5.92 | -2.68 | -5.13 | 0.73 | -1.08 | -2.36 | -5.87 | 6.16 | -2.39 | -0.92 | -0.11 |
| Tr. 3 years | - | - | 1.92 | -2.21 | -7 | -5.47 | -2.7 | -9.08 | -2.43 | -2.46 | 2.67 | -3.39 |
| Tr. 5 years | - | - | - | - | -2.61 | -2.56 | -10.17 | -13.12 | -2.78 | -5.79 | -5.64 | -3.46 |
| Tr. 10 years | - | - | - | - | - | - | - | - | - | -8.26 | -8.05 | -13.29 |
| **S&P500** | 13.69 | 1.38 | 11.96 | 21.83 | -4.38 | 31.49 | 18.40 | 28.71 | -18.11 | 26.29 | 25.02 | 17.88 |
| *Alpha* | -1.37 | 0.71 | 2.7 | -13.3 | -3.16 | -6.03 | -17.96 | -9.42 | 16.73 | -17.22 | -11.57 | -2.08 |
| Tr. 3 years | - | - | 2.01 | -10.32 | -13.77 | -21.1 | -25.34 | -30.17 | -13.26 | -12.47 | -14.55 | -28.32 |
| Tr. 5 years | - | - | - | - | -14.35 | -18.4 | -33.52 | -41.37 | -21.06 | -32.52 | -36.5 | -24.21 |
| Tr. 10 years | - | - | - | - | - | - | - | - | - | -42.21 | -48.18 | -49.62 |
| **MS LV Cat.** | 10.21 | -4.05 | 14.81 | 15.94 | -8.53 | 25.04 | 2.91 | 26.22 | -5.90 | 11.63 | 14.28 | 14.97 |
| *Delta* | 2.11 | 6.14 | -0.15 | -7.41 | 0.99 | 0.42 | -2.47 | -6.93 | 4.52 | -2.56 | -0.83 | 0.83 |
| Tr. 3 years | - | - | 8.22 | -1.87 | -6.63 | -6.10 | -1.09 | -8.85 | -5.13 | -5.21 | 1.0 | -2.57 |
| Tr. 5 years | - | - | - | - | 1.19 | -0.48 | -8.56 | -14.77 | -3.78 | -7.17 | -8.32 | -5.22 |
| Tr. 10 years | - | - | - | - | - | - | - | - | - | -6.06 | -8.77 | -13.33 |

68.    Table 1.b below illustrates the Invesco Fund's performance as compared to the Comparator Funds based on: (i) yearly returns for the years 2014-2025; (ii) trailing three-year

CLASS ACTION COMPLAINT - 15

returns for the years 2016-2025; (iii) trailing five-year returns for the years 2018-2025; and (iv) trailing ten-year returns for the years 2023-2025:

Table 1.b
Invesco Fund
Annual and 3-Year, 5-Year, and 10-Year Compounded Trailing Returns vs.
Comparator Funds

| Fund | Annual Performance | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
| Invesco | 12.32 | 2.09 | 14.66 | 8.53 | -7.54 | 25.46 | 0.44 | 19.29 | -1.38 | 9.07 | 13.45 | 15.8 |
| VWNAX | 11.26 | -3.14 | 13.49 | 16.89 | -8.53 | 29.16 | 14.53 | 29.08 | -13.14 | 21.07 | 14.29 | 18.69 |
| GSFTX | 12.66 | 0.61 | 13.47 | 20.74 | -4.39 | 28.13 | 7.79 | 26.28 | -4.96 | 10.52 | 15.01 | 15.85 |
| HHDFX | 11.83 | -5.02 | 15.06 | 14.81 | -7.48 | 22.26 | 4.68 | 31.26 | -3.45 | 13.67 | 19.80 | 8.16 |
| TLVIX | 8.98 | -3.24 | 17.53 | 17.7 | -8.49 | 24.12 | 4.69 | 32.09 | -4.55 | 12.93 | 13.03 | 19.63 |
| *Delta* | 1.14 | 4.79 | -0.23 | -9.01 | -0.32 | -0.46 | -7.48 | -10.39 | 5.15 | -5.48 | -2.08 | 0.22 |
| Tr. 3 years | - | - | 5.74 | -4.87 | -9.5 | -9.71 | -8.2 | -17.47 | -12.83 | -10.94 | -2.68 | -7.25 |
| Tr. 5 years | - | - | - | - | -4.09 | -5.6 | -16.66 | -25.14 | -13.5 | -17.98 | -19.32 | -12.6 |
| Tr. 10 years | - | - | - | - | - | - | - | - | - | -21.33 | -23.84 | -27.16 |

69.     Table 1.c below illustrates the Invesco Fund's cumulative compounded performance as compared to the Comparator Funds, the Prospectus Benchmarks, and the Morningstar LV Benchmark:

Table 1.c
Invesco Fund
Cumulative Compounded Performance vs. the Comparator Funds, the Prospectus Benchmarks, and the Morningstar LV Benchmark

| Cumulative Compounded Performance 2017 - 2025 | | |
|---|---|---|
| Fund / Benchmark | Cumulative Compounded Performance | Underperformance vs. Comparator |
| Invesco | 113.16% | N/A |
| VWNAX | 191.23% | -78.07% |
| GSFTX | 181.77% | -68.61% |

CLASS ACTION COMPLAINT - 16

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

| Fund / Benchmark | Cumulative Compounded Performance 2017 - 2025 | |
|---|---|---|
| | Cumulative Compounded Performance | Underperformance vs. Comparator |
| HHDFX | 153.76% | -40.6% |
| TLVIX | 169.45% | -56.29% |
| *Delta* | 174.05% | -60.89% |
| Russell 1000 | 131.91% | -18.75% |
| S&P500 | 255.78% | -142.62% |
| MS LV Cat. | 137.72% | -24.56% |

70. As of December 31, 2024, the assets in the Invesco Fund had an approximate value of $584.4 million. Assuming that amount resulted from a cumulative compound growth of 113.16%, the original amount in 2017 would have been approximately $274.16 million ($584.4 / 2.1316 = $274.16). Had $274.16 million been invested in one of the Comparator Funds, its value at the start of 2026 would have been, on average, approximately $751.34 million (or an increase in value for participants of approximately $166.94 million).

71. The foregoing return, trailing 3, 5 and 10-year trailing return, and cumulative performance information is information Defendants would have had available had they conducted a simple analysis evaluating the Invesco Fund and compared its performance to its own Prospectus Benchmarks, the Morningstar LV Benchmark, or any of the Comparator Funds.

72. A prudent fiduciary monitoring the Invesco Fund's performance would have compared the fund's returns to returns of the fund's own stated Prospectus Benchmarks, the Morningstar LV Benchmark and one or more of the Comparator Funds identified in Table 1.b and Table 1.c.

73. When considering whether to retain a large value/dividend-paying fund in a plan, a prudent fiduciary would evaluate the fund's risk and return characteristics as compared to the entire universe of comparable available funds based on qualitative and quantitative metrics. A prudent

CLASS ACTION COMPLAINT - 17

fiduciary could not have reasonably concluded that retention of the Invesco Fund was appropriate for the Plans.

### C. Defendants Violated Their ERISA Fiduciary Duties by Failing to Timely Remove the Consistently Underperforming Subject Funds

74.     Each of the Defendants is, or during the Class Period was, a fiduciary of the Plans under ERISA.  Accordingly, Defendants were obligated to vigorously and independently investigate the merits of each of the investment options available to the Plans, using prudent methods in conducting such investigation.  29 U.S.C. §1104(a)(1)(B).

75.     Defendants selected the Invesco Fund as an investment option in the Plans since at least 2014.  Since then, participants who wanted to invest in a large-cap value/dividend strategy fund had no other choice than to invest in the Invesco Fund.

76.     Post-selection, as fiduciaries of the Plans, Defendants were responsible for monitoring the Invesco Fund's performance with the skill of a prudent expert to determine whether its investment performance was in line with meaningful comparators within a recognized peer universe.

77.     As demonstrated, the Invesco Fund has consistently underperformed its peer benchmarks on a trailing three-year basis for nine years (2017-2025), on a trailing five-year basis for eight consecutive years (2018-2025), on a trailing ten-year basis for three consecutive years (2023-2025), and on a cumulative compounded basis.  Indeed, if participants invested in the Invesco Fund had invested their funds in one of the corresponding Comparator Funds in 2017, by the start of 2026, those same amounts would have made, on average, approximately $166.94 million more than those same funds made invested in the Invesco Fund. Had Defendants fulfilled their duty with the care and skill of a prudent fiduciary, they would have seen in real-time that the Invesco Fund underperformed its benchmarks.

78.     Despite years of underperformance and a marketplace teeming with better performing investment options, Defendants did not remove the Invesco Fund from the Plans.

CLASS ACTION COMPLAINT - 18

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

79. Defendants' decision to retain the Invesco Fund was imprudent as it was injurious to the Plans and its participants. Nine years of underperformance in comparison to peer benchmarks is difficult, if not impossible, to justify.

80. Defendants breached their fiduciary duty of prudence by retaining the Invesco Fund—resulting in a devastating impact on Plaintiffs' and their fellow participants' retirement accounts, simultaneously impairing the Plans' overall investment performance and wasting millions in retirement savings.

81. Any fiduciary would have seen that the poor performance of the Invesco Fund warranted the selection of a new large-cap value/dividend-paying fund option—particularly given that such underperformance was sustained for nine years.

82. The Defendants' breaches have had a profound adverse effect on the Plans and their participants. The overall breadth and depth of the Invesco Fund's underperformance raises a plausible inference that Defendants' selection and monitoring process was tainted by a lack of competency and/or complete failure of effort.

## CLASS ACTION ALLEGATIONS

83. Plaintiffs bring this action as a class action on behalf of all participants and beneficiaries of the Plans pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2) and/or (b)(3). Specifically, Plaintiffs bring this action on behalf of:

All participants and beneficiaries of the Plans who, at any time during the Class Period of April 17, 2020 through the date of judgment, were invested in the Invesco Diversified Dividend Fund R5.

The Class excludes Defendants, any officers and directors of Providence, and any employees of Providence with responsibility for the Plans' investment or administrative functions, and members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. The class also excludes attorneys for Plaintiffs and Defendants and members of the federal judiciary and their staff.

84. This action may be certified as a Class under Rule 23(a)(1) as the members of the Class are so numerous that joinder of all members is impracticable. While the exact number of

CLASS ACTION COMPLAINT - 19

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are tens of thousands of members of the proposed Class. Members of the Class may be identified from records maintained by Providence and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

85.    Plaintiffs' claims are typical of the claims of the members of the Class as Plaintiffs were each Plan participants invested in the Invesco Fund during the Class Period, and all participants invested in the Invesco Fund during the Class Period were harmed by Defendants' misconduct.

86.    Plaintiffs will fairly and adequately protect the interests of the members of the Class as they each participated in the Plans during the Class Period, are committed to vigorous representation of the Class, and have retained counsel competent and experienced in class litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

87.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class because Defendants owed the same fiduciary duties to the Plans and all participants and beneficiaries and took a common course of actions and omissions as alleged herein as to the Plans, and not as to any individual participant, that affected all Class members through their participation in the Plans in the same way.  Among the questions of law and fact common to the Class are:

(a)    whether each of the Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. §1109(a);

(b)    whether the fiduciaries of the Plans breached their fiduciary duties to the Plans by employing an imprudent process for monitoring and evaluating Plans' investment options;

(c)    whether Plaintiffs' claims of an imprudent process require similar inquiries and proof of the claims and therefore implicate the same set of concerns for all proposed members of the Class;

(d)    what are the losses to the Plans resulting from each breach of fiduciary duty;

CLASS ACTION COMPLAINT - 20

(e)     what Plan-wide equitable and other relief the Court should impose in light of Defendants' breaches; and

(f)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

88.     Certification under Rule 23(b)(1) is appropriate as prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants in respect to the discharge of their fiduciary duties to the Plans and personal liability to the Plans under 29 U.S.C. § 1109(a).  Moreover, adjudications by individual participants and beneficiaries regarding the alleged breaches of fiduciary duties, and remedies for the Plans would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests.  Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

89.     Additionally, or in the alternative, certification under Rule 23(b)(2) is appropriate because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.  Plaintiffs seek reformation of the Plans to make them include more viable retirement investment options, which will benefit the Plans and other participants in the Plans.

90.     Additionally, or in the alternative, this action may be certified as a Class under Rule 23(b)(3) as questions of law or fact common to members of the Class predominate over any questions affecting individual members of the Class, and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

**CAUSES OF ACTION**
**COUNT I**
**Breach of Duty of Prudence for Failing to Remove Imprudent Investments from the Plans Within a Reasonable Time**
**(Violation of ERISA, 29 U.S.C. § 1104)**
**(Against All Defendants)**

CLASS ACTION COMPLAINT - 21

91. All allegations set forth in the Complaint are realleged and incorporated herein by reference.

92. Providence used the Plans as a strategic and financial benefit to recruit and retain workers.

93. In joining Providence and subsequently enrolling in the Plans, employees trusted and relied on Providence's resources and expertise to construct and maintain a state-of-the-art retirement plan.

94. At all relevant times during the Class Period, Defendants acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A) by exercising authority and control with respect to the management of the Plans and their assets.

95. 29 U.S.C. § 1104(a)(1)(B) requires a plan fiduciary to act with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

96. Thus, the scope of the fiduciary duties and responsibilities of Defendants include administering the Plans with the care, skill, diligence, and prudence required by ERISA. Defendants are responsible for evaluating and monitoring the Plans' investment options on an ongoing basis, eliminating imprudent investments, and taking all necessary steps to ensure the Plans' assets are invested prudently.

97. Defendants breached their fiduciary duties by adopting an imprudent process for evaluating and monitoring investment options in the Plans. The faulty process resulted in the Plans' inclusion of a single large-cap value/dividend-paying fund (the Invesco Fund), which has exhibited chronic poor performance for over nine years.

98. By failing to adequately consider better-performing investment products for the Plans, Defendants failed to discharge their duties with the care, skill, prudence, and diligence that a

CLASS ACTION COMPLAINT - 22

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

prudent fiduciary acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

99.    Defendants' breach of fiduciary duty has substantially impaired the Plans' value and their investment performance for all Class Members.

100.    As a direct and proximate result of Defendants' breaches of fiduciary duty, the Plans and their participants who invested in the Invesco Fund have suffered nearly $70 million in damages and lost-opportunity costs which continue to accrue and for which Defendants are jointly and severally liable pursuant to 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a).

101.    Each of the Defendants is liable to make good to the Plans the losses resulting from the aforementioned breaches, to restore to the Plans any profits resulting from the breaches of fiduciary duties alleged in this Count and are liable for other equitable or remedial relief as appropriate.

102.    Each Defendant also participated in the breach of the other Defendants, knowing that such acts were a breach, and enabled the other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties.  Each Defendant knew of the breach by the other Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach.  Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary duties under 29 U.S.C. § 1105(a).

## COUNT II
### Failure to Monitor
### (Against All Defendants)

103.    All allegations set forth in the Complaint are realleged and incorporated herein by reference.

104.    Defendants had a duty to monitor the performance of each individual to whom they delegated any fiduciary responsibilities.  A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of the Plans' assets, and must take prompt and effective action to protect the Plans and participants when they are not.

CLASS ACTION COMPLAINT - 23

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

105. To the extent any Defendant's fiduciary responsibilities were delegated to another fiduciary, such Defendant's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

106. Defendants breached their fiduciary monitoring duties by, among other things:

(a) failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plans suffered enormous losses as a result of their appointees' imprudent actions and omissions with respect to the Plans;

(b) failing to establish a fiduciary process and failing to monitor their appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the imprudent investment option in violation of ERISA;

(c) failing to establish a prudent process for evaluating and ensuring that the Plans' investment options were prudent; and

(d) failing to remove appointees whose performance was inadequate in that they continued to allow imprudent investment options to remain in the Plans to the detriment of Plan participants' retirement savings.

107. Each fiduciary who delegated its fiduciary responsibilities likewise breached its fiduciary monitoring duty by, among other things:

(a) failing to monitor its appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plans suffered enormous losses as a result of its appointees' imprudent actions and omissions with respect to the Plans;

(b) failing to monitor its appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the imprudent investment options in violation of ERISA;

(c) failing to implement a process to ensure that the appointees had a prudent process in place for evaluating and ensuring that the Plans' investment options were prudent;

CLASS ACTION COMPLAINT - 24

(d)    failing to remove appointees whose performance was inadequate in that they continued to allow imprudent investment options to remain in the Plans to the detriment of Plan participants' retirement savings.

108.    As a direct result of these breaches of the fiduciary duty to monitor, the Plans have suffered substantial losses.    Had Providence and the other delegating fiduciaries prudently discharged their fiduciary monitoring duties, the Plans would not have suffered these losses.

## PRAYER FOR RELIEF

For these reasons, Plaintiffs, on behalf of the Plans and all similarly situated participants and beneficiaries of the Plans, respectfully request that the Court:

i)    find and adjudge that Defendants have breached their fiduciary duties, as described above;

ii)    find and adjudge that Defendants are personally liable to make good to the Plans the losses to the Plans resulting from each breach of fiduciary duty, and to otherwise restore the Plans to the position they would have occupied but for the breaches of fiduciary duty;

iii)    find and adjudge that Defendants are liable to the Plans for appropriate equitable relief, including but not limited to restitution and disgorgement;

iv)    determine the method by which the Plans' losses under 29 U.S.C. § 1109(a) should be calculated;

v)    order Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plans under 29 U.S.C.§ 1109(a);

vi)    remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

vii)    impose surcharge against Defendants and in favor of the Plans all amounts involved in any transactions which such accounting reveals were improper, excessive, and/or in violation of ERISA;

CLASS ACTION COMPLAINT - 25

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480

viii)    reform the Plans to include only prudent investments;

ix)    certify the Class, appoint Plaintiffs as class representatives, and appoint Kahn Swick & Foti, LLC as Class Counsel;

x)    award to the Plaintiffs and the Class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

xi)    order Defendants to pay interest to the extent allowed by law; and

xii)    grant such other equitable or remedial relief as the Court deems appropriate.

Dated: April 17, 2026

TOWNSEND LEGAL, PLLC

By: /s Roger M. Townsend
Roger M. Townsend, WSBA# 25525
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110
Phone: (206) 761-2480
Fax:    (206) 455-9555
roger@townsendlegal.com

*Attorneys for Plaintiffs, the Plans, and the Proposed Class*

OF COUNSEL

Melinda A. Nicholson (Bar No. 24140232)*
Michael J. Palestina (LA Bar No. 31907)*
John A. Carriel (DC Bar No. 888241661)*
Gina M. Palermo (LA Bar No. 33307)*
KAHN SWICK & FOTI, LLC
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 648-1842
Facsimile: (504) 455-1498
Email: melinda.nicholson@ksfcounsel.com
Email: michael.palestina@ksfcounsel.com
Email: john.carriel@ksfcounsel.com
Email: gina.palermo@ksfcounsel.com

*Pro Hac Vice Applications Forthcoming*

*Attorneys for Plaintiffs, the Plans, and the Proposed Class*

CLASS ACTION COMPLAINT - 26

**TOWNSEND LEGAL, PLLC**
380 Winslow Way, Suite 200
Bainbridge Island, WA 98110 Tel: 206-761-2480